<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEDRO MEDINA,<br><br>               Petitioner,<br><br>   v.<br><br>STEVEN JOHNSON, *et al.*,<br><br>             Respondents. | Civil Action No. 16-00289 (GC)<br><br><u>OPINION</u> |

<u>**CASTNER, District Judge**</u>

**THIS MATTER** comes before the Court upon a *pro se* amended petition for a writ of habeas corpus (Amended Petition) pursuant to 28 U.S.C. § 2254 (§ 2254) filed by Petitioner Pedro Medina. (ECF No. 10.) Respondents answered the Petition (ECF No. 18), and Petitioner filed a Traverse (ECF No. 20).[1] The Court has carefully considered the parties' submissions. For the reasons set forth below, and other good cause shown, the Petition is **DENIED** and a certificate of appealability shall not issue.

## I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Petitioner's convictions arise from the sexual assault of three female children. The New Jersey Appellate Division's 2007 opinion addressing Petitioner's direct appeal provided the following factual background:

---

[1]      To the extent Petitioner raises new grounds for relief in his Traverse, the Court will not consider those grounds. *See Salas v. Warren*, Civ. No. 11-5154, 2019 WL 3423534, at *1 n.1 (D.N.J. July 30, 2019) ("[A] habeas petitioner cannot raise new claims in his traverse."); *see also Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief.").

This appeal concerns the sexual assault of three female children by defendant. Defendant, presently twenty-nine years old, was the boyfriend of the children's mother, Alice ("Alice"), who died in May 2003. The children who were the victims of the charged offenses are A.M., currently sixteen years of age; T.M., currently fifteen years of age, and N.T., now thirteen years old. The children's mother also had A.B.M., a son. A.M., T.M., and A.B.M. have the same father. N.T.'s father is another individual. Defendant and Alice also had two children, L.M. and F.M., together.

Defendant, Alice, and the children lived together in a Carteret apartment, moved to another apartment on Warren Street, and subsequently moved in with Alice's mother, the children's maternal grandmother, after their residence burned down. Before moving in with the maternal grandmother, defendant would supervise the children when Alice was not home. It was during Alice's absence that the sexual abuse of the children occurred. Defendant sexually abused A.M. beginning when she was ten and continuing until she was twelve years old. T.M. was abused from the time she was nine to eleven years of age. N.T. was abused from age seven to age nine.

On July 4, 2003, A.M., T.M., and A.B.M.'s aunt, Maria ("Maria"), was preparing lunch for her twelve-year-old niece, A.M., at her house in Elizabeth. As Maria was cooking, A.M. disclosed to her that defendant "had raped her." Maria did not tell anyone about A.M.'s statement until she brought A.M. back to her maternal grandmother's house on July 8, 2003.

Upon arriving at her grandmother's house, A.M. and her grandmother got into a confrontation over A.M.'s behavior. At the time of this revelation, there was a custody dispute over A.M. and T.M. between the children's father and the maternal grandmother. All three girls were then living with their grandmother while custody was being resolved. During the confrontation between A.M. and her grandmother, the grandmother threatened that if she got custody, she was going to take A.M. to the doctor to see if she was a virgin. A.M. yelled back at her and told her, "I'm not a virgin, but [it's] not because of what you think of."

Maria asked the other children to leave the apartment and disclosed to the girl's grandmother that A.M. had told her that defendant had "touched her." Maria then asked T.M. if defendant had touched her and she responded in the affirmative. At that time, N.T. also disclosed to Maria that, "on several occasions, [defendant] had sexual intercourse with her. And she was one time in the shower

2

and he went in the shower with her." DYFS and the police were notified and Maria left without further discussion with the children regarding their allegations. DYFS workers arrived at the grandmother's home later that evening.

DYFS investigators arrived in response to a call from the grandmother. They interviewed each of the girls individually in the grandmother's bedroom. Each of the girls relayed to the DYFS investigators the details of their abuse by defendant. Both T.M. and N.T. informed the investigators that they had told their mother about the abuse. T.M. said her mother threw defendant out but eventually he came back, and N.T. stated when she told her mother about the abuse her mother did not do anything because she did not want to cause any trouble.

Following the interviews, the matter was immediately referred to the Carteret Police Department and the Middlesex County Prosecutor's Office. Defendant was arrested on July 10, 2003.

On July 18, 2003, Dr. Linda Shaw, an expert in pediatrics, specifically child abuse examinations and evaluations, conducted an evaluation of two of the girls, T.M. and N.T. With respect to T.M., the doctor did not see any specific injury to her genital tissues. After examining N.T., the doctor found a laceration or cut in the hymenal tissue that was healed but clearly evident. On August 15, 2003, Dr. Shaw examined A.M. and found some damage to her hymenal tissue. During Dr. Shaw's interview of A.M., A.M. also told Dr. Shaw that she had had sexual experiences with people other than defendant around the time she claimed that she was sexually assaulted by defendant.

On October 3, 2003, the Middlesex County Grand Jury returned Indictment No. 03-10-1298, charging defendant with three counts of first-degree aggravated sexual assault, contrary to N.J.S.A. 2C:14-2a (counts one, six, and eleven); three counts of second-degree sexual assault, contrary to N.J.S.A. 2C:14-2b (counts two, nine, and twelve); three counts of second-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4a (counts three, ten, and thirteen); third-degree terroristic threats, contrary to N.J.S.A. 2C:12-3a (count four); three counts of third-degree criminal restraint, contrary to N.J.S.A. 2C:13-2 (counts five, seven, and fourteen); and second-degree attempted sexual assault, contrary to N.J.S.A. 2C:5-1 and 2C:14-2b (count eight).

On February 22, 2005, prior to the commencement of trial,

3

defendant moved before the trial court to be permitted to admit evidence of A.M.'s previous sexual conduct pursuant to the Rape Shield Law, N.J.S.A. 2C:14-7. Defendant wanted to argue at trial that A.M. and the other girls fabricated the assaults by defendant and pointed to him as the offender to conceal A.M.'s own sexual experiences from her grandmother. The State opposed the admission of A.M.'s past sexual history, arguing that the rape shield statute was intended to protect such information. The court denied the motion on March 14, 2005, finding that the defense had other ways of proving A.M.'s fabrication of the assault without getting into her prior sexual activity.

The criminal restraint and terroristic threat charges were dismissed on the prosecutor's motion on April 12, 2005. Trial in this case was held on April 11, 12, 13, and 18, 2005.

All three children testified concerning the allegations of sexual abuse at trial. They each testified to the specific actions of defendant. In addition, Dr. Shaw testified at trial that a laceration to A.M.'s hymenal wall was "consistent with" A.M.'s statements regarding abuse but that the doctor would have no way of knowing what actually caused the tearing. T.M. stated during trial that her half sister, step-mother and her father had been aware of defendant's sexual abuse. T.M. stated that her father spoke to Alice about the abuse and that T.M. had also spoken to Alice about the issue and told her defendant had sexually assaulted her.

*State of New Jersey v. P.L.M.*, No. A-2368-05T4, 2007 WL 1753588, at *1-3 (N.J. Super. Ct. App. Div. June 18, 2007).[2]

Petitioner was convicted in a 2005 jury trial of three counts of first-degree aggravated sexual assault, N.J. Stat. Ann. § 2C:14-2(a); three counts of second-degree sexual assault, N.J. Stat. Ann. § 2C:14-2(b); three counts of second-degree endangering the welfare of a child, N.J. Stat. Ann. § 2C:24-4(a); and one count of second-degree attempted sexual assault, N.J. Stat. Ann. §§ 2C:5-1 and 2C:14-2(b). *P.L.M.*, 2007 WL 1753588, at *1. As a result, Petitioner was sentenced to a term of forty-eight years subject to an eighty-five percent parole ineligibility period in

---

[2]     The Appellate Division used initials "[t]o safeguard the privacy of the minor victims." *P.L.M.*, 2007 WL 1753588, at *1 n.1.

accordance with the No Early Release Act (NERA), N.J. Stat. Ann. § 2C:43-7.2.  *P.L.M.*, 2007 WL 1753588, at *1.  On direct appeal, the New Jersey Appellate Division affirmed in part and reversed in part Petitioner's conviction.  *Id.* at 15.  The Appellate Division remanded the case for the trial court to address A.M.'s prior sexual history, which was excluded from the trial, and for a resentencing hearing.  *Id.*  However, the convictions arising from the abuse of T.M. and N.T. were affirmed.  *Id.*

Following a remand hearing, the trial judge found insufficient evidence of any prior sexual history to warrant piercing the Rape Shield Law and denied a new trial as to the convictions arising from abuse against A.M.  *State of New Jersey v. P.L.M.*, No. A-2368-05T4, 2009 WL 1025191, at *2 (N.J. Super. Ct. App. Div. Apr. 17, 2009).  The trial judge also imposed the same sentence.  *Id.*  The Appellate Division affirmed.  *Id.* at *3.  The New Jersey Supreme Court denied certification.  *State of New Jersey v. P.L.M.*, 6 A.3d 443 (N.J. 2010).

In October 2010, Petitioner filed an application for post-conviction relief (PCR).  (ECF No. 10 at 5.[3])  *See State of New Jersey v. P.L.M.*, No. A-1703-11T4, 2014 WL 349478, at *1 (N.J. Super. Ct. App. Div. Feb. 3, 2014).  Petitioner asserted claims for ineffective assistance of counsel, among other claims.  *P.L.M.*, 2014 WL 349478, at *1.  The trial court denied Petitioner's PCR without an evidentiary hearing, and the Appellate Division affirmed.  *Id.*  The New Jersey Supreme Court denied certification.  *State of New Jersey v. P.L.M.*, 108 A.3d 632 (N.J. 2015).

In February 2020, Petitioner filed a second PCR.  *State of New Jersey v. P.L.M.*, No. A-0007-20, 2022 WL 1565318, at *1 (N.J. Super. Ct. App. Div. May 18, 2022).  Petitioner again asserted claims for ineffective assistance of counsel, among other claims.  *Id.*  The trial court denied Petitioner's PCR without an evidentiary hearing, and the Appellate Division affirmed.  *Id.*

---

[3]    Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

at *1-2.  The New Jersey Supreme Court denied certification.  *State of New Jersey v. P.L.M.*, 290 A.3d 613 (N.J. 2023).

In 2016 and 2017, Petitioner filed petitions for a writ of habeas corpus in this District. (ECF Nos. 1 & 3.)  The Honorable Peter G. Sheridan, U.S.D.J. (ret.) subsequently stayed this case because Petitioner was pursuing state court claims based on newly discovered evidence.  (ECF No. 5.)  After receiving notice that Petitioner had exhausted his state court remedies, Judge Sheridan reopened this case and ordered Petitioner to file an "all-inclusive amended petition."  (ECF No. 9.)  Petitioner then filed the instant Amended Petition on May 31, 2023.  (ECF No. 10.)  Petitioner raises nine grounds in his habeas petition:

1. The Court violated [Petitioner's] constitutional right to present evidence in his defense as well as his Confrontation Clause rights by excluding evidence regarding A.M.'s prior sexual experiences.  U.S. Const. Amends. VI, XIV; N.J. Const. art. I. ¶¶ 1, 10.

2. The trial court's comment on [Petitioner's] right to testify, essentially reduced that decision to a matter of trial strategy, thereby violating defendant's constitutional rights and mandating a reversal of his conviction.  U.S. Const. Amends. V, VI; and N.J. Const., (1947) Art. I. ¶¶ 1, 9 and 10.

3. The prosecutor's comment during summation that N.T. would not look at [Petitioner] while she testified because she feared him and did not want to look at the man who assaulted her were improper and so prejudicial as to deny [Petitioner] a fair trial and require the reversal of his conviction.  U.S. Const. Amends. XIV, N.J. Const., (1947) Art. I. ¶ 10.

4. The [Petitioner] was denied a fair trial when the court permitted evidence to be elicited from DYFS worker Dorsey Ash that she found A.M. and N.T. to be credible.  U.S. Const. Amends. V, VI, XIV; and N.J. Const., (1947) Art. I. [¶¶ 1, 9 and 10.

5. The testimony of DYFS worker [A]sh and investigator Nieves, wherein they testified that A.M. told them she had been sexually assaulted by [Petitioner], was inadmissible hearsay as A.M. was not of tender years.  [Petitioner] was thus denied his right to due process and a fair trial.  U.S. Const. Amends. V, VI, XIV; N.J. Const., (1947) Art. I. [¶¶ 1, 9 AND 10.

6. The trial court imposed an excessive sentence, necessitating reduction.  U.S. Const, Amends. V, VI, VIII, XIV. N.J. Const., (1947) Art. I. [¶¶] 1, 9 and 10.

7.  [Petitioner] was denied his right under the Sixth and Fourteenth Amendments of the United States Constitution to effective assistance of counsel, due process of law and a fair trial guaranteed by the Constitution.[4]

(ECF No. 10 at 7-18.)

## II.    <u>STANDARDS OF REVIEW</u>

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws or treaties of the United States. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254).  Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (Apr. 24, 1996), applies.  *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

"[B]efore a federal court may consider the merits of a § 2254 habeas petition, an inmate ordinarily must exhaust the state-court remedies for the claimed violation of federal law."  *Ross v. Adm'r E. Jersey State Prison*, 118 F.4th 553, 562 (3d Cir. 2024) (citing 28 U.S.C. § 2254(b)(1)(A)); *see also* 28 U.S.C. § 2254(b)(1)(B) (enumerating exceptions).  A petitioner exhausts state court remedies by fairly presenting the factual and legal basis of his federal law claims to the state trial court, its intermediate appellate court, and the state supreme court.  *See Ross*, 118 F.4th at 564.  State court remedies are exhausted when they are no longer available.  *See Id.* at 565.

However, when state court remedies are no longer available, "the claim may still be subject to dismissal on procedural-default grounds."  *Id.* (footnote omitted) (citing *Marsalis v. Pa. Dep't*

---

[4]    Grounds 8 and 9 are phrased the same as ground 7, but are based on different facts.  (ECF No. 10 at 7-8.)  Additionally, grounds 7 through 9 are numbered 13 through 15 in the Amended Petition.  (*Id.*)

*of Corr.*, 37 F.4th 885, 889 (3d Cir. 2022); *Whitney v. Horn*, 280 F.3d 240, 252 (3d Cir. 2002)). "Ordinarily, for procedural default, a state-court decision must contain a 'plain statement' that its ruling rests on such an adequate and independent state-law ground." *Id.* (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). In the absence of a recognized excuse for the procedural default, a habeas court may not review the merits of the procedurally defaulted federal claim. *See id.*

A petitioner can avoid procedural default by showing "cause and prejudice." *See id.* "Cause" requires showing that there was an objective reason the petitioner could not comply with the procedural rule. *See id.* at 565-66. "Prejudice" means "that the constitutional violation 'worked to his *actual* and substantial disadvantage.'" *Shinn v. Ramirez*, 596 U.S. 366, 379-80 (2022) (emphasis in original) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). A petitioner can avoid procedural default by establishing a "fundamental miscarriage of justice," which requires a plausible showing of actual innocence. *See Epps v. Chetirkin*, No. 21-16719, 2025 WL 602983, at *4 (D.N.J. Feb. 25, 2025), *appeal filed*, No. 25-1472 (3d Cir. Mar. 17, 2025).

Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state

court renders its decision." *Id.* (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bell v. Cone*, 535 U.S. 685, 698 (2002)).  To obtain relief under the "contrary to" clause of § 2254(d)(1), a Petitioner must show that the state court applied a rule different from the governing law of the Supreme Court or decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *See Bell*, 535 U.S. at 694.  Under the "unreasonable application" prong, the federal habeas court asks whether the state court's application of clearly established federal law was "objectively unreasonable."  *Williams*, 529 U.S. at 409.  Thus, "a federal habeas court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.  Furthermore, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006).

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam)).  A petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.  *See id.*

In applying AEDPA's standards, the relevant state court decision is the last reasoned state court decision.  *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008).  Furthermore, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  *Ylst v.*

*Nunnemaker*, 501 U.S. 797, 803 (1991) (quoting *Coleman v. Thompson*, 501 U.S. 722, 740 (1991)); *see also Rambo v. Adm'r E. Jersey State Prison*, 762 F. App'x 105, 107 (3d Cir. 2019) (noting the applicability of *Ylst*'s "look through" doctrine).

## III.    <u>DISCUSSION</u>

### A.  Ground One

In ground one, Petitioner argues that his constitutional rights were violated when the trial court excluded evidence regarding A.M.'s prior sexual encounters.  (ECF No. 10 at 9.)  As previously outlined, the Appellate Division originally remanded Petitioner's case on this particular issue.  The Appellate Division provided the following factual overview of this issue following the remand hearing:

> On remand, the same judge that presided at trial held an N.J.R.E. 104 hearing.  Dr. Shaw testified that during her second evaluation of A.M., the girl had indicated that she had "some prior sexual partners."  The term "sexual partners" was Dr. Shaw's language, not how A.M. had described them.  Dr. Shaw was not able to identify a time when those encounters took place.  She did not discuss the specifics of what was involved in those encounters with A.M.  Dr. Shaw was certain that A.M. had said that these contacts were with "boys," and there had been at least two.

> In her physical examination of A.M., Dr. Shaw found some tearing of A.M.'s hymenal tissue, which could be attributed to blunt trauma to the tissue.  According to Dr. Shaw, such tearing is rarely found in sexual assault cases involving menstruating females.  It is far more likely to occur in younger children.  Because A.M. had begun menstruating at age ten, the tearing of A.M.'s hymenal tissue was consistent with her allegations of sexual abuse beginning at age nine.  According to Dr. Shaw, the fact that A.M. might have been having sex with other individuals did not change this finding.

> A.M. testified that prior to defendant sexually assaulting her, she had not had sex with anyone else.  She did not have a boyfriend at the time when Dr. Shaw examined her.  A.M. denied having told Dr. Shaw of any sexual activity with anyone other than defendant, and insisted that any sexual activity she referred to during the examination was in reference to defendant.

On cross-examination, A.M. admitted that her grandmother had told her several times that she was going to have her examined by a doctor to see if she was still a virgin. These confrontations with her grandmother were upsetting to her. According to A.M., her grandmother found her diary, in which she described defendant's assaults on her. She specifically named him. However, there were no other boys' or men's names in the diary.

A.M.'s grandmother testified that she was concerned about the behavior of A.M. and her two younger sisters. She had never threatened to have A.M. examined to determine if she was still a virgin. On cross-examination, the grandmother testified that she did not recall finding A.M.'s diary.

On a continuation date of the remand hearing, defense counsel indicated that he interviewed a teenage boy who had been identified as possibly having had sexual relations with A.M. Defense counsel, however, learned from this boy that his sexual encounters with A.M. had taken place well after the time period A.M. stated defendant sexually abused her.

A.M. and her maternal grandmother also testified at the remand hearing.

The judge found there was insufficient evidence of any prior sexual history to warrant piercing the Rape Shield Law, N.J.S.A. 2C:14-7. The judge determined that there was no basis for admitting at a trial the alleged revelation of "prior sexual partners" to Dr. Shaw. The judge concluded that nothing at the remand hearing warranted piercing the Rape Shield Law nor were there sufficient credibility issues to allow admission of the alleged A.M.-Shaw conversation regarding sexual partners. The judge denied a new trial. The judge reimposed the same consecutive sixteen-year term with a NERA parole disqualifier on the conviction involving A.M.

*P.L.M.*, 2009 WL 1025191, at *1-2.

The Appellate Division analyzed Petitioner's claim and determined that it lacked merit:

In cases involving sexual assault, the Rape Shield Law, N.J.S.A. 2C:14-7, serves to presumptively exclude[] evidence relating to a victim's prior sexual conduct. N.J.S.A. 2C:14-7(a). Any defendant seeking to introduce such evidence must apply for a hearing with the trial court to determine if the evidence could be admitted under other provisions of the law. *Ibid.* The Rape Shield

Law does allow in prior sexual history when it relates to proving that another individual is the source of any physical evidence or when the evidence could negate the element of force. *State v. Budis*, 125 N.J. 519, 530 (1991); N.J.S.A. 2C:14-7(c).

Our Supreme Court has reviewed the scope of the Rape Shield Law on several occasions, including very recently in *State v. Schnabel*, 196 N.J. 116 (2008). The Court has held that the purpose of the law is to "protect the privacy interests of the victim while ensuring a fair determination of the issues bearing on the guilt or innocence of the defendant." *Id.* at 128 (quoting *State v. Garron*, 177 N.J. 147, 165 (2003), *cert. denied*, 540 U.S. 1160, 124 S. Ct. 1169, 157 L. Ed.2d 1204 (2004)). Furthermore, the law prevents the attempt to discredit a victim by presentation of past history that is irrelevant to the issues of a case. *Ibid.*

However, a defendant's right to confront witnesses under the Federal and State Constitutions require a limiting of the scope of the protection provided by the Rape Shield Law, otherwise those rights "would be . . . empty one[s] if the State were permitted to exclude competent, reliable evidence bearing on . . . credibility . . . when such evidence is central to the defendant's claim of innocence." *Id.* at 129 (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2147, 90 L. Ed.2d 636, 645 (1986)). In light of the important constitutional rights of a defendant, a court "must balance competing factors to determine when the admission of prior sexual [activity] is appropriate." *Id.* at 130. On one side is the interest of the State in excluding the proposed evidence against the defendant's constitutional rights. However, when "evidence is relevant and necessary to a fair determination of the issues," the constitutional rights must prevail. *Ibid.* (quoting *Garron*, *supra*, 177 N.J. at 171).

Resolution of the issue turns largely on the judge's findings of fact. He found: (1) no proof of A.M. having been sexually active; (2) no proof that A.M. reported prior sexual partners to Dr. Shaw, other than what appears in the doctor's notes; and (3) the grandmother denied making any threats to A.M. regarding an exam for virginity. Given these findings, which are supported by the proofs and are thus binding on us, it is clear that the judge's ruling is correct pursuant to the Rape Shield Law. *State v. Locurto*, 157 N.J. 463, 470-71 (1999) (quoting *State v. Johnson*, 42 N.J. 146, 161-62 (1964)).

*P.L.M.*, 2009 WL 1025191, at *2-3.

As the United States Supreme Court has made clear, "[t]he Sixth Amendment's

Confrontation Clause guarantees a criminal defendant the right to confront the witnesses against him." *Smith v. Arizona*, 602 U.S. 779, 783 (2024). However, "[i]t does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). To the contrary, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.*; *see United States v. Johnson*, No. 21-1322, 2022 WL 866284, at *4 n.8 (3d Cir. Mar. 23, 2022) ("The right to cross-examination in the Sixth Amendment's Confrontation Clause is subject to a district court's discretion to exclude certain matters under Rule 403. The Sixth Amendment guarantees an opportunity for cross-examination, 'not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" (quoting *Van Arsdall*, 475 U.S. at 679)).

Here, the Appellate Division carefully examined Petitioner's claim that his constitutional rights were violated when the trial court excluded evidence regarding A.M.'s prior sexual encounters and did not unreasonably apply clearly established federal law or unreasonably determine the facts in resolving his claim. Rather, the Appellate Division properly affirmed the trial court's finding that there was insufficient evidence to show A.M. had prior sexual encounters, and therefore was correct in ruling that any testimony related to alleged prior sexual encounters was barred pursuant to the Rape Shield law. *See Hatcher v. Ricci*, Civ. No. 08-5370, 2010 WL 3021875, at *19 (D.N.J. July 29, 2010) (denying petitioner's application for writ of habeas corpus and finding "all rulings made by [the] [p]etitioner's trial judge appear well based on constitutionally valid rules of evidence and/or on constitutionally sound state law limiting inquiries

into prior sexual activities of rape victims"); *see also Michigan v. Lucas*, 500 U.S. 145, 151-53 (1991) (finding that the exclusion of prior sexual activity is not a per se violation of the Sixth Amendment).

Therefore, the Court denies habeas relief as to ground one.

### B. Ground Two

In ground two, Petitioner argues that his constitutional rights were violated when "[t]he trial court's comment on defendant's right to testify, essentially reduced that decision to a matter of trial strategy." (ECF No. 10 at 11.) The Appellate Division provided the following factual overview of this issue on direct appeal:

> After the State rested its case, the judge made the following comments to the jury:
>
>> Thank you. Ladies and gentlemen, the State is finished with its case. And we by prearrangement have agreed that the defense, being late in the day, the defense wouldn't put on its case until Monday morning. So you can-you're free to retire for the weekend.
>
> Outside the jury's presence, defense counsel objected to these comments, stating, "And I don't know how to cure at this point. But your Honor stated to the jury, that by our agreement, the defense case wouldn't start until Monday morning. I'm not sure if we have a defense case. That's the problem, we don't have any burden." The trial court agreed with defense counsel, brought the jury back out and delivered the following instruction:
>
>> Ladies and gentlemen, it was pointed out that I might have inadvertently indicated to you that the defense case would proceed on Monday. As you know, when I gave you your preliminary instructions and also before you were even selected as jurors, the defendant in a criminal case is under no obligation to prove his innocence. He is not obligated to put any testimony or evidence onto the record on his own behalf. He has a right to remain silent under our constitution. And that cannot be used against him or

whatsoever about his guilt or innocence of the charges.

The State bears the burden of proving each and every element of each and every charge beyond a reasonable doubt. That burden never shifts to the defendant. The defendant has an absolute right to present no evidence in his own behalf. The defendant will consult with his attorney.

They will analyze the State's case. We'll give them the weekend to do that. And on Monday morning, the-you will either get your instructions or there'll be further proceedings in the courtroom. We don't know which.

But again, you should not expect that the defendant will or will not present any evidence on his own behalf because he is absolutely under no obligation to do so. He is innocent of the charges until proven guilty beyond a reasonable doubt by the State of New Jersey.

The following Monday morning, after defendant's motion for a judgment of acquittal was denied, defense counsel moved for a mistrial based on the judge's comments regarding defendant's decision whether to testify or not. Defense counsel asserted that the court's comments transformed defendant's right not to testify into a tactical decision. The trial court denied the motion and denied defendant's later motion for a new trial on this ground.

*P.L.M.*, 2007 WL 1753588, at *7-8.

The Appellate Division analyzed Petitioner's claim and determined that it lacked merit:

It is well-established that, "[j]urors quite naturally are swayed by a judge's views, for the judge is a figure of objectivity and impartiality." *State v. Corbo*, 32 N.J. 273, 277 (1960). Therefore, "[i]n criminal cases, the court should be cautious in the exercise of the power of comment with a view to protecting the rights of the defendant." *State v. Jones*, 104 N.J. Super. 57, 62 (App. Div. 1968), *certif. denied*, 53 N.J. 354 (1969). Comments by the judge "should be temperately and fairly made, and should not be argumentative or contentious . . . which makes it characteristically an act of advocacy." *Ibid.*

15

A review of the record does not show that any prejudice arose from the court's comments or that the court failed to protect the rights of defendant. When the court made its first comment on April 13, 2005, that "defense counsel's case would not start until Monday morning," the trial court quickly agreed with defense counsel that it misspoke, brought the jury back into the courtroom and immediately issued a curative instruction clearly stating that defendant "is not obligated to put any testimony or evidence onto the record on his own behalf. He has the right to remain silent under our constitution . . . the State bears the burden of proving each and every element of each and every charge beyond a reasonable doubt." When read in its entirety, such an instruction cured any confusion that may have been caused in the minds of the jurors. The court made sure to immediately correct itself, instructing the jury as to the shifting of burdens of proof, that defendant's silence cannot be used to draw inferences of guilt, and that defendant had an "absolute right to present no evidence in his behalf." Defendant also protests over the court's remark that defendant would have the weekend to consult with his attorney to analyze the State's case to decide whether to testify or not. This comment did not effectively deny defendant of his State and Federal constitutional rights. First, it should be noted that defense counsel only objected to this comment during a hearing for a mistrial motion on April 18, 2005, five days after the instruction was made. Defendant's failure to object to this curative instruction strongly indicates that defense counsel did not perceive it to be prejudicial when it was made or that it detracted from the instructions as a whole. *See State v. Tierney*, 356 N.J. Super. 468, 481-82 (App. Div.), *certif. denied*, 176 N.J. 72 (2003); *State v. Wilbely*, 63 N.J. 420, 422 (1973); *State v. Macon*, 57 N.J. 325, 333 (1971).

Second, the court sufficiently and repeatedly instructed the jury that defendant could elect to refrain from testifying, that such a decision could not be construed to be an indication of guilt, and that the State possessed the burden of proof. Such points were also discussed by the court during the preliminary jury instructions and in the final jury charge. Moreover, defense counsel informed the jury, during both its opening and closing statements, that defendant could elect not to testify. During the defense's opening statement, counsel stated that defendant "is under no burden this entire trial. He doesn't have to take the stand and testify. He doesn't have to call a single witness." During defendant's summation, defense counsel similarly stated, "as the court has told you repeatedly, [defendant] does not have to prove himself innocent . . . [defendant is] under no obligation to do anything. It's the State that has to prove [its] case" [emphasis added]. In addition, the prosecutor also told

the jury that "the State bears the burden of proving each element beyond a reasonable doubt."

Third, the latter comments of the trial judge were not opinions on the evidence, were not prejudicial, argumentative or contentious.  The trial judge made a mistaken remark and worked promptly and repeatedly to correct it and protect defendant's constitutional rights through further instructions and detailed final instructions.

Thus, through the court's two curative instructions, its preliminary and final jury charges, and the prosecutor and defense counsel's opening and closing statements, the jury was fully apprised that defendant had a right to remain silent and did not carry the burden of proof.  The court's instructions were clear and correct, and the jury was properly charged.  There was no error meriting a reversal of the conviction in this regard.

*P.L.M.*, 2007 WL 1753588, at *8-9 (alteration in original).

"Trials are not perfectly orchestrated productions." *State of New Jersey v. Yough*, 31 A.3d 271, 272 (N.J. 2011).  And as the Supreme Court has stressed, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Van Arsdall*, 475 U.S. at 681; *Lutwak v. United States*, 344 U.S. 604, 619 (1953) (same).  It is, therefore, inevitable that "some measure of imperfection characterizes almost every trial."  *State v. Feaster*, 716 A.2d 395, 437 (N.J. 1998).

A petitioner is not entitled to habeas relief based on a trial error unless he can establish that it resulted in actual prejudice.  *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995).  Rather, an error will be deemed harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *U.S. ex rel. Cannon v. Maroney*, 373 F.2d 908, 910 (3d Cir. 1967) ("It is well settled that errors committed during the trial of a criminal case in a state court are not subject to review in a habeas corpus proceeding in a federal court unless it is shown that the errors were so conspicuously prejudicial as to deprive the defendant of a fair trial.")  An accused is entitled to habeas relief only if the habeas court "is in grave doubt as to the harmlessness of an error that affects substantial rights."  *O'Neal*, 513 U.S. at

445.

Relying on the trial judge's prompt and thorough curative responses, the Appellate Division determined that the trial judge's comments did not amount to an error warranting reversal. The Court finds that the Appellate Division's determinations did not unreasonably apply clearly established federal law or unreasonably determine the facts in resolving his claim. Nor does the Court find that the comments from the trial judge affected any substantial rights of the Petitioner. Moreover, the Court presumes the jury followed the trial judge's instructions to disregard his comments about defense's case. *See United States v. Olano*, 507 U.S. 725, 740 (1993) (noting that it is "almost invariable assumption of the law that jurors follow their instructions," and that courts will presume "that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them" (quoting *Francis v. Franklin*, 471 U.S. 307, 324, n.9 (1985).

Therefore, the Court denies habeas relief as to ground two.

## C. Ground Three

In ground three, Petitioner argues that his constitutional rights were violated because the prosecutor commented during summation that "N.T. would not look at defendant while she testified because she feared him and did not want to look at the man who assaulted her." (ECF No. 10 at 12.) The Appellate Division provided the following factual overview of this issue on direct appeal:

> During summation, defense counsel urged the jury to disregard the fact that N.T. was crying while she was on the stand and did not want to look at defendant. In an effort to counter defendant's request to the jury, the prosecutor made the following comment during summation:

> "There's no question [N.T.] was sobbing. It was heart wrenching to hear her. She had difficulty walking into the courtroom, clearly fearing the defendant. Defense counsel says we can't really determine why she was crying. But I submit to you, ladies and gentlemen, that when this young lady sat in this chair, as did the other two, at no point did she want to look at defendant. [N.T.] sat here, and I had to question her right beside her because she didn't want to turn around. She didn't want to turn around because she didn't want to look at the defendant. And I submit to you that's why she was crying. She did not want to face the person that had assaulted her.
>
> Defense counsel objected to the prosecutor's remarks during summation and asserted that there was no evidence that N.T. said she did not want to face defendant and that the prosecutor was "testifying about facts not in evidence." The court overruled the objection, stating that it did not believe there was "anything improper about any of the statements. Counsel may have . . . been somewhat in error about a specific thing [that] happened and when . . . [T]hat's really not a basis for an admonition or mistrial. The jury has heard all the evidence and can figure it out for themselves."

*P.L.M.*, 2007 WL 1753588, at \*9-10.

The Appellate Division analyzed Petitioner's claim and determined that it lacked merit:

> In assessing whether prosecutorial misconduct, such as improper remarks in summation, requires reversal, we must determine whether "the conduct was so egregious that it deprives the defendant of a fair trial." *State v. Frost*, 158 N.J. 76, 83 (1999); *State v. Blakney*, 189 N.J. 88, 96 (2001); *State v. Loftin*, 146 N.J. 295, 386 (1996), *remanded*, 157 N.J. 253 (1999); *State v. Ramseur*, 106 N.J. 123, 322 (1987), *cert. denied*, 508 U.S. 947, 113 S. Ct. 2433, 124 L. Ed.2d 653 (1993). The Supreme Court has held that factors such as whether defense counsel made a timely objection, whether the remark was withdrawn promptly, whether the trial judge ordered the remarks stricken, and whether the judge instructed the jury to disregard them, may be utilized to determine whether the right to a fair trial has been denied. *Ramseur*, *supra*, 106 N.J. at 322-23.
>
> An attorney may make remarks that constitute legitimate inferences from the facts. *State v. Perry*, 65 N.J. 45, 48 (1974); *State v. Mayberry*, 52 N.J. 413, 437 (1968), *cert. denied*, 393 U.S. 1043,

89 S. Ct. 673, 21 L. Ed.2d 593 (1969). However, he or she may not go beyond the facts before the jury. *State v. Farrell*, 61 N.J. 99, 103 (1972). A prosecutor's remarks may be harmless if they are only a response to remarks by opposing counsel. *State v. Di Paglia*, 64 N.J. 288 (1974). In reviewing a prosecutor's summation, the court must consider the context in which the challenged portions were made. *State v. Engel*, 249 N.J. Super. 336, 379 (App. Div.), *certif. denied*, 130 N.J. 393 (1991); *see also State v. Morton*, 155 N.J. 383, 419 (1998), cert. denied, 532 U.S. 931, 121 S. Ct. 1380, 149 L. Ed.2d 306 (2001).

The prosecutor's comments that N.T. was crying on the stand as a result of her fear of defendant did not constitute reversible error. First, it can be inferred from the facts on record that N.T. was actually afraid of defendant while she was on the stand. The record reveals various delays during the proceeding before N.T. finally took the stand. Once on the stand, N.T. spoke softly and was asked several times to speak up. N.T. also hesitated and found it difficult to answer the question, "can you tell us how defendant touched you in a bad way?" Thus, the prosecution's remark addressed the legitimate inference that the eleven-year-old child was afraid of defendant.

Moreover, in placing the remarks of the prosecution in their full context, it becomes clear that the State was directly answering defense counsel's remarks during summation concerning N.T.'s crying on the stand. The defense urged the jury to ignore N.T.'s demeanor, however, it was wholly appropriate for the prosecutor, in response to defense counsel's summation, to urge the jury to assess N.T.'s demeanor and to draw a reasonable inference from her crying that she did not want to see defendant. "Generally, remarks by a prosecutor, made in response by opposing counsel, are harmless." *State v. C.H.*, 264 N.J. Super. 112, 135 (App. Div.), *certif. denied*, 134 N.J. 479 (1993). The prosecutor's comments were based upon defense counsel's earlier remarks and facts in the record, and thus offer no ground for reversal. *See State v. Smith*, 167 N.J. 158, 178 (2001).

In addition, it should be noted that the prosecutor's remarks were also harmless in light of the court's preliminary and final jury charges. The court noted that statements made by attorneys in their opening and closing statements are not facts to be considered as evidence and that the only evidence in this case "is the testimony of witnesses under oath that you heard in this courtroom and the physical evidence that will go to the jury room with you." Such instruction further preserved defendant's constitutional rights and

prevented reversible error.

> Because motions for mistrial based on prosecutorial misconduct are left to the discretion of the trial court and should be granted only where manifest injustice would otherwise result, the trial court in this case was correct in determining that none of the prosecutor's comments warranted declaring a mistrial. *See State v. Labrutto*, 114 N.J. 187, 207 (1989). Having considered the full context in which the prosecutor's remarks were made, defendant's conviction cannot be reversed on this ground.

*P.L.M.*, 2007 WL 1753588, at *10-11.

A criminal defendant's due process rights are violated if prosecutorial misconduct renders a trial fundamentally unfair. *See Darden v. Wainwright*, 477 U.S. 168, 182-83 (1986). A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (internal quotation marks and citation omitted). A prosecutorial misconduct claim is examined in "light of the record as a whole" in order to determine whether the conduct "had a substantial and injurious effect or influence" on the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 638, (1993). A "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

The Appellate Division's denial of this claim was not contrary to nor an unreasonable application of clearly established federal law, nor was its denial based on an unreasonable determination of the facts. The Appellate Division did not err in finding that the prosecutor made the legitimate inference that the eleven-year-old child was afraid of defendant.[5] Indeed, "[i]t is

---

[5]    Petitioner asserts that he received a "New Affidavit" from a family member (an aunt) indicating that N.T. told her that N.T. lied and that Petitioner did not abuse the child. (ECF No. 10 at 13.) According to Petitioner, this new evidence could affect ground three because it shows

fundamental that counsel presenting a summation is free to repeat the evidence and even 'argue reasonable inferences from the evidence,' as long as counsel refrains from misstating the evidence." *United States v. Hodge*, 870 F.3d 184, 203 (3d Cir. 2017) (quoting *United States v. Fulton*, 837 F.3d 281, 306 (3d Cir. 2016)); *see also United States v. Bates*, 46 F. App'x 104, 110 (3d Cir. 2002) ("[T]he government is entitled to summarize its case graphically and forcefully.") Moreover, to the extent the prosecutor's comments were improper, any prejudice was cured by the trial judge's preliminary and closing instructions to the jury, indicating that the statements made by attorneys in their opening and closing statements are not facts to be considered as evidence and that the only evidence in the case is the testimony of witnesses under oath. *See Locus v. Johnson*, Civ. No. 18-11527, 2021 WL 1749466, at *13-14 (D.N.J. May 4, 2021) (finding that to the extent the prosecutor made improper comments during summation, the preliminary and final jury instructions cured any prejudice to the defendant).

Therefore, the Court denies habeas relief as to ground three.

## D. Ground Four

In ground four, Petitioner argues that his constitutional rights were violated because the court permitted evidence to be elicited from DYFS worker Dorsey Ash, who found A.M. and N.T. to be credible, and because the admission of such testimony "created an unwarranted aura of 'expertise' by the DYFS worker." (ECF No. 10 at 14.) The Appellate Division provided the

---

that N.T. was sobbing because of her guilt about making a false accusation. (*Id.*) However, review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen*, 563 U.S. at 181. The "New Affidavit" was not submitted to the state courts until April 15, 2015, several years after the New Jersey Supreme Court denied certification on Petitioner's claim challenging the prosecutor's closing argument. (ECF No. 10 at 13); *P.L.M.*, 6 A.3d 443. In any event, the affidavit does not show that the prosecutor's comments rendered Petitioner's trial fundamentally unfair given the evidence supporting the inference that N.T. was afraid of Petitioner or negate the fact that the jury instructions were sufficient to cure any prejudice arising from the comments.

following factual overview of this issue on direct appeal:

> Both during the N.J.R.E. 104 hearing and at trial, Ash testified, without any objection from defense counsel, that when she interviewed A.M. at her grandmother's house, she appeared to be "very honest and confident in what she was saying." When asked to describe A.M.'s demeanor with respect to the girl's disclosure that defendant had sexually assaulted her in front of T.M., Ash stated at trial, without any defense objection, that A.M. seemed "very certain about what had happened. She didn't hesitate. She appeared to be straightforward."

> Ash also testified at the N.J.R.E. 104 hearing that T.M.'s demeanor appeared to be "confident and eager to share the information." At trial, Ash testified that during the interview, T.M. was "very confident, eager to tell her story. It seemed like it was a relief to her she just needed to get it off her chest." The trial court sustained defense counsel's objection to the latter sentence and told the jury to disregard it because Ash could not testify about how T.M. felt.

*P.L.M.*, 2007 WL 1753588, at *11.

The Appellate Division analyzed Petitioner's claim and determined that it lacked merit:

> N.J.R.E. 602 provides that a witness may not testify to a matter unless the witness has personal knowledge of it. N.J.R.E. 701 permits a lay witness to render an opinion under the following circumstances:

>> If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact issue.

> A non-expert may give his or her opinion on matters of common knowledge and observation. *State v. Bealor*, 187 N.J. 574, 586 (2006); *State v. Johnson*, 120 N.J. 263, 294 (1990); *Labrutto*, *supra*, 114 N.J. at 197; *see also Biunno*, Current N.J. Rules of Evidence, comment 2 on N.J.R.E. 701 (2007).

> The court did not deny defendant a fair trial when it permitted the testimony from Ash. First, the Supreme Court has held that, "the admissibility of opinion evidence rests within the

discretion of the trial court." *Labrutto*, *supra*, 114 N.J. at 197. Here, the trial court determined in its discretion that Ash's testimony would not be prejudicial and permitted its introduction. Moreover, defense counsel never objected to same, nor did defense counsel demonstrate that its introduction constituted error.

Second, the Rules of Evidence clearly allow lay witnesses to testify in the form of opinion or inferences if those statements arise from the witness' personal knowledge and are helpful to understanding the witness' testimony or to determine a fact in issue. N.J.R.E. 701; *see also Labrutto*, *supra*, 114 N.J. at 197-98. In this case, Ash testified as to the children's demeanor and her opinion, based on her personal interview with the children, of their disposition during the interview. Technical or specialized knowledge was not required to render an opinion on such matters of demeanor or attitude. Indeed, the court acted within its authority in permitting Ash's testimony on the children's demeanor and attitude. Similarly, as a lay witness, Ash was permitted to testify about her own observations of A.M. and T.M.'s demeanor.

Thirdly, it is important to note that Ash's testimony concerning the two girls' demeanors during their respective interviews was not sufficient, in itself, to cause error meriting reversal. Defense counsel had the opportunity to personally cross-examine Ash during the N.J.R.E. 104 hearing and at trial. In addition, given the fact that both A.M. and T.M. both testified at trial themselves and that the videotape of T.M.'s interview was shown to the jury at trial, the court's admission of Ash's testimony was not erroneous.

Finally, Ash never rendered an opinion regarding the children's honesty or veracity, nor did she ever hold herself out as an expert. As a lay person who happened to be employed by DYFS, she merely described the disposition of the children during the DYFS interviews. Thus, the court did not err by admitting the evidence complained of. *See* N.J.R.E. 607; *compare State v. Clausell*, 121 N.J. 298, 337-38 (1990), *with State v. J.Q.*, 252 N.J. Super. 11, 39 (App. Div. 1991), *aff'd*, 130 N.J. 554 (1993).

*P.L.M.*, 2007 WL 1753588, at *11-13.

It is well established that "[a] federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence. [Rather,] [a] federal habeas court is limited to deciding whether the admission of the evidence rose to the level of a due process

violation." *Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001); *see Massenburg v. Davis*, 704 F. Supp. 3d 540, 557 (D.N.J. 2023) ("[S]tate evidentiary rulings can generally violate federal law, and therefore form a possible basis for habeas relief, only where a petitioner can show the evidentiary ruling was not just unfair, but 'extremely' so, to the point of a violation of 'fundamental fairness.'" (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990))).

The Court finds that the Appellate Division's admission of Ash's testimony does not rise to the level of a due process violation, was neither contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. First, this issue appears to relate solely to state evidentiary issues, which federal courts should refrain from opining on. *Keller*, 251 F.3d at 416. Second, Petitioner has not demonstrated how the admission of Ash's testimony was fundamentally unfair, especially since defense counsel had the opportunity to cross-examine Ash at a pre-trial hearing and the trial and had the opportunity to cross-examine the victims during the trial. Third, it appears clear from the record that Ash was testifying as a lay witness and not as an expert. As a result, the Appellate Division was correct in finding that the trial court did not err in admitting the evidence. *See Russell v. Johnson*, Civ. No. 20-3478, 2023 WL 5970953, at *12 (D.N.J. Sept. 14, 2023) (finding that there was no due process violation to the habeas petitioner when at trial the witness testified as to his personal observations); *Potter v. Att'y Gen. of N.J.*, Civ. No. 15-8784, 2018 WL 3201799, at *15 (D.N.J. June 29, 2018) (finding that the question of lay witness testimony was not proper before the federal courts on habeas petition and further finding that even though the one witness testified about heroin, the witness did not provide expert testimony).

Therefore, the Court denies habeas relief as to ground four.

### E.  Ground Five

In ground five, Petitioner argues that his constitutional rights were violated because "[t]he testimony of DYFS worker [A]sh and investigator Nieves, wherein they testified that A.M. told them she had been sexually assaulted by Defendant, was inadmissible hearsay as A.M. was not of tender years."  (ECF No. 10 at 15.)   The Appellate Division provided the following factual overview of this issue on direct appeal:

> Following the N.J.R.E. 104 hearing regarding the admissibility of out-of-court statements of A.M., T.M. and N.T., the trial court ruled that the statements of A.M. made to Maria were admissible as fresh complaint evidence.  The court also held that T.M. and N.T.'s statements to Ash and Nieves were admissible under the tender years exception to the hearsay rule since the statements were probably trustworthy and made by persons under twelve years of age.  N.J.R.E. 803(c)(27).
>
> At trial, and over defense counsel's objection, the prosecutor asked DYFS worker Ash what A.M. told her when she interviewed her in her grandmother's bedroom.  Ash testified that defendant entered through her window, made T.M. stay in the bathroom and had intercourse with A.M.  Ash further testified that A.M. told her mother about the incident but her mother did not do anything about it.
>
> The prosecutor also asked investigator Nieves what A.M. disclosed during her interview.  Defense counsel objected on hearsay grounds, the prosecutor withdrew the question and then asked whether A.M. had indicated that she had been sexually assaulted and by whom.   A.M. indicated that defendant had assaulted her.

*P.L.M.*, 2007 WL 1753588, at *13.

The Appellate Division analyzed Petitioner's claim and determined that it lacked merit:

> "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  N.J.R.E. 801(c); *Neno v. Clinton*, 167 N.J. 573, 579 (2001).  It is not admissible except as provided by the Rules of Evidence or by other law.  N.J.R.E. 802.  In this case, the disputed testimony by Nieves and Ash consisted of

out-of-court statements made by A.M. and the other children and were offered by the prosecution to demonstrate that defendant, in fact, sexually assaulted the girls. Thus, the statements by Ash and Nieves were hearsay.

N.J.R.E. 802(a)(2), however, offers an exception to the hearsay bar. It allows admission of statements "offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive." *Neno*, *supra*, 167 N.J. at 580. The scope of the exception "encompasses prior consistent statements made by the witness before the alleged 'improper influence or motive' to demonstrate that the witness did not change his or her story." *Ibid.*; *see also State v. Torres*, 313 N.J. Super. 129, 158-59 (App. Div.), *certif. denied*, 156 N.J. 425 (1998). Importantly, "a prior consistent statement offered solely to bolster a witness' testimony is inadmissible" under the exception. *Neno*, *supra*, 167 N.J. at 580; *see also Palismano v. Pear*, 306 N.J. Super. 395, 402 (App. Div. 1997). In addition, N.J.R.E. 607 permits a party to introduce extrinsic evidence relevant to credibility, whether or not that evidence bears upon the subject matter of the action. N.J.R.E. 607; *see also State v. Martini*, 171 N.J. 176, 255 (1993).

The admission into evidence of Ash's testimony was proper as A.M.'s prior consistent statement under N.J.R.E. 803(a)(2) and 607. Consistent with these Rules of Evidence, the State was within its rights to introduce extrinsic evidence in the form of Ash's testimony to support A.M.'s credibility because she had made a prior consistent statement regarding defendant's sexual abuse to her mother well before the disclosure to Maria, her grandmother, Ash and Nieves. A.M.'s statements were not utilized merely to bolster her testimony, but had legitimate probative force. *See United States v. Pierre*, 781 F.2d 329, 333 (2d Cir.1986), *cert. denied*, 528 U.S. 1052, 120 S. Ct. 593, 145 L. Ed.2d 493 (1999). Moreover, it has been held that "trial judges are entrusted with broad discretion in making evidence rulings." State v. Muhammed, 359 N.J. Super. 361, 388 (App. Div.), *certif. denied*, 178 N.J. 36 (2003). In this case, the trial court admitted the disputed testimony as evidence. The trial court did not err.

In this case, both Nieves and Ash testified that A.M. reported sexual abuse by defendant. Such testimony was not improper. The trial court acted cautiously to protect defendant's due process rights by first conducting an N.J.R.E. 104 hearing to ascertain that the testimony of Maria, Ash and Nieves was trustworthy for admission. Thus, the trial judge properly exercised his discretion and admitted the challenged testimony.

*P.L.M.*, 2007 WL 1753588, at *14.

Pursuant to the New Jersey Rules of Evidence, "[a] statement previously made by a person who is a witness at a trial or hearing [is not excluded by the hearsay rule], provided it would have been admissible if made by the declarant while testifying" and the statement "is consistent with the witness' testimony and is offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive." *State of New Jersey v. Moore*, 151 A.3d 109, 117 (N.J. Super. Ct. App. Div. 2016) (quoting N.J. R. Evid. 803(a)(2)). "The New Jersey rule is modeled after Federal Rule of Evidence 801(d)(1)(B)." *Chew v. Hendricks*, Civ. No. 04-5894, 2007 WL 2437830, at *9 (D.N.J. Aug. 23, 2007). However, "[s]tates may interpret their own rules of evidence as they see fit even if the state rule is a counterpart to the federal rule." *Id.* (citing *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

The Court finds that the Appellate Division's decision affirming the trial court did not give rise to a due process violation, was not contrary to, nor an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts. Indeed, as the Appellate Division noted, the trial court "acted cautiously to protect" Petitioner's due process rights by conducting a pre-trial hearing to ascertain the trustworthy of the testimony of Ash and Nieves. *P.L.M.*, 2007 WL 1753588, at *14. Moreover, as the Appellate Division recognized, A.M.'s prior consistent statements to Ash and Nieves had legitimate probative value and fell within the prior consistent statement hearsay exception. As a result, the Court will not second guess the state courts' decisions on this evidentiary ruling, especially since both Ash and Nieves would have been subject to cross-examination on their statements. *See Keller*, 251 F.3d at 416 n.2 ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence" unless the evidentiary ruling "was of such magnitude as

to undermine the fundamental fair[]ness of the entire trial.")

Because the Court perceives no error from the Appellate Division, habeas relief is denied as to ground five. *See Alford v. Warden N.J. State Prison*, Civ. No. 15-5640, 2019 WL 1418121, at *7-8 (D.N.J. Mar. 29, 2019) (denying habeas relief and finding no error in admitting prior consistent statements under N.J. R. Evid. 803(a)(2)); *Chew*, 2007 WL 2437830, at *11 (denying habeas relief and finding no error in admitting prior consistent statements because the jury was entitled to hear testimony and determine credibility).

### F.  Ground Six

In ground six, Petitioner argues that he is entitled to habeas relief because the "trial court imposed an excessive sentence, necessitating reduction."  (ECF No. 10 at 16.)  The Appellate Division provided the following factual overview of this issue on direct appeal:

> The trial court imposed an aggregate sentence of forty-eight years subject to an eighty-five percent period of parole ineligibility pursuant to N.J.S.A. 2C:43-7.1 (NERA). The court based its sentence upon its findings of the existence of aggravating factors, specifically: (1) N.J.S.A. 2C:44-1a(1), the nature and circumstances of the offense; (2) N.J.S.A. 2C:44-1a(9), the need for deterrence; and (3) N.J.S.A. 2C:44-1a(3), the risk of repetition. No mitigating factors were found.

*P.L.M.*, 2007 WL 1753588, at *13.  In accordance with *State of New Jersey v. Natale*, 878 A.2d 724 (N.J. 2005), which held that defendants who receive sentences in excess of their presumptive term of imprisonment based on facts unrelated to their prior criminal record and who raise the issue at trial or on direct appeal are entitled to a new sentencing hearing, the Appellate Division remanded for a new sentencing hearing.  *P.L.M.*, 2007 WL 1753588, at *15.

Following a remand hearing, the trial judge "reimposed the same consecutive sixteen-year term with a NERA parole disqualifier on the conviction involving A.M."  *P.L.M.*, 2009 WL 1025191, at *2. On appeal, the Appellate Division affirmed Petitioner's sentencing:

After a careful review of the record we conclude that the sentencing factors identified by the judge are supported by the evidence. *Johnson*, *supra*, 42 N.J. at 162. The aggravating factors preponderate and justify the sentence imposed. The sentence is in accord with the sentencing guidelines and based on a proper weighing of the factors. *State v. O'Donnell*, 117 N.J. 210, 215 (1989). The sentence does not shock our judicial conscience. *State v. Roth*, 95 N.J. 334, 364-65 (1984). We also conclude that the sentences comply with the mandates of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed.2d 403 (2004); *State v. Abdullah*, 184 N.J. 497 (2005); and *State v. Natale*, 184 N.J. 458 (2005) (*Natale II*).

*P.L.M.*, 2009 WL 1025191, at *3.

With respect to the applicable constitutional law:

"[a] federal court's ability to review state sentences is limited to challenges based upon proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies.'" *Merritt v. Bartkowski*, No. 11–3756, 2013 WL 4588722, at *15 (D.N.J. Aug. 28, 2013) (quoting *Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted)). Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984). *See also* 28 U.S.C. § 2254(a); *Estelle* [*v. McGuire*], 502 U.S. [ ] 62, 67 [(1991)].

*Burns v. Warren*, Civ. No. 13-1929, 2016 WL 1117946, at *43 (D.N.J. Mar. 22, 2016). Regarding showing that a sentence is cruel and unusual,

[t]he Supreme Court has explained that the "Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to non-capital sentences." *Ewing v. California*, 538 U.S. 11, 20, 123 S. Ct. 1179, 1185, 155 L. Ed. 2d 108 (2003) (citations omitted). A court must consider three proportionality factors when evaluating Eighth Amendment challenges: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem v. Helm*, 463 U.S. 277, 290–92, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983). In conducting this analysis, a court grants substantial deference to legislative decisions regarding punishments for crimes.

> *United States v. Rosenberg*, 806 F.2d 1169, 1175 (3d Cir. 1986);
> [*United States v.*] *Miknevich*, 638 F.3d [178,] [ ] 186 [(3d Cir. 2011)]
> ("Generally, a sentence within the limits imposed by statute is
> neither excessive nor cruel and unusual under the Eighth
> Amendment . . . because we accord substantial deference to
> Congress, as it possesses broad authority to determine the types and
> limits of punishments for crimes.").
>
> The first factor acts as a gateway prong to the proportionality
> inquiry. The Eighth Amendment, after all, only forbids sentences
> that are "grossly disproportionate" for a conviction for the crime
> involved. If the defendant fails to demonstrate a gross imbalance
> between the crime and the sentence, a court's analysis of an Eighth
> Amendment challenge is at an end. Successful proportionality
> challenges in non-capital cases are "exceedingly rare." *Ewing*, 538
> U.S. at 21, 123 S. Ct. at 1185 (quoting *Rummel v. Estelle*, 445 U.S.
> 263, 272, 100 S. Ct. 1133, 1138, 63 L. Ed. 2d 382 (1980)).

*United States v. Burnett*, 773 F.3d 122, 136–37 (3d Cir. 2014).

Petitioner fails to show that the denial of this claim by the state courts was contrary to or

an unreasonable application of clearly established federal law, and he also fails to establish that

the state courts' denial was based on an unreasonable factual determination. Petitioner was

convicted of three counts of first-degree aggravated sexual assault, N.J. Stat. Ann. § 2C:14-2(a),

which permits a sentence of up to twenty years imprisonment for each count of that offense. N.J.

Stat. Ann. § 2C:43-6(a)(1). Petitioner received a sentence of sixteen years for each count of that

offense and for the counts to run consecutive. This sentence was within the statutory term for each

offense. Moreover, the imposition of consecutive sentences is within the sound discretion of the

trial court. *State of New Jersey v. Francois*, A-0757-10T3, 2012 WL 4661667, at *10 (N.J. Super.

Ct. App. Div. Oct. 4, 2012) ("The decision to impose a consecutive or concurrent sentence lies

within the discretion of the trial judge." (citing *State of New Jersey v. Miller*, 13 A.3d 873 (N.J.

2011))). Accordingly, Petitioner fails to show that his sentence runs afoul of the Eighth

Amendment. *See, e.g.*, *Burtrim v. D'Ilio*, Civ. No. 14-4628, 2018 WL 1522706, at *17 (D.N.J.

Mar. 28, 2018) (denying federal habeas relief on excessive sentence claim noting petitioner's sentence fell within statutory limits). On these facts, the Court will not second guess the trial court's sentencing decision.

Therefore, Petitioner is not entitled to habeas relief on ground six.

### G. Grounds Thirteen, Fourteen, and Fifteen[6]

In grounds thirteen, fourteen, and fifteen Petitioner argues that he is entitled to habeas relief because "he was denied his right under the Sixth and Fourteenth Amendments of the United States Constitution to effective assistance of counsel, due process of law and a fair trial guaranteed by the Constitution." (ECF No. 10 at 7-8.) He asserts the following facts in support of grounds thirteen, fourteen, and fifteen, respectively: (1) "The PCR Court erred when it denied a second petition for post-conviction relief due to a procedural bar"; (2) "Petitioner received ineffective assistance of counsel from first PCR Counsel because he repeated the same error and/or omissions as Trial Counsel"; and (3) "Petitioner's Due Process Rights [were] violated by the PCR Court when that Court refused to examine witness certifications through an evidentiary hearing." (*Id.*)

#### 1. *Procedural Default*

Ground thirteen lacks merit because the New Jersey Appellate Division was permitted to deny the second PCR pursuant to a state specific procedural bar. "The Third Circuit has found [New Jersey Court] Rule 3:22-4, which limits the circumstances under which a second or subsequent PCR petition may be filed, to be an independent and adequate state ground for procedural dismissal." *Johnson v. Attorney General*, Civ. No. 19-0403, 2025 WL 1367448, at *11 (D.N.J. May 12, 2025) (citing *Cabrera v. Barbo*, 175 F.3d 307, 313 (3d Cir. 1999)). Here, the Appellate Division made clear that Petitioner's claims were barred under New Jersey Court rules

---

[6]     The numbering of Grounds for Relief in the Amended Petition skip from six (ECF No. 10 at 16) to thirteen (*id.* at 7).

3:22-4(b) and 3:22-12(a)(2).  *See P.L.M.*, 2022 WL 1565318, at *2 (noting that "Rule 3:22-12 makes clear the one-year limitation for second or subsequent PCR petitions is non-relaxable"). Therefore, because denying a successive PCR petition based on a procedural bar is permissible, Petitioner's conclusory statement, without more, certainly does not show that the Appellate Division erred, or establish the grounds to avoid the procedural default, *see Ross*, 118 F.4th at 565.

Therefore, Petitioner is not entitled to habeas relief on ground thirteen.

### 2.  *Ineffective Assistance as to PCR Counsel*

Ground fourteen lacks merit because it is not a viable basis for habeas relief.  It is well established that a "[p]etitioner's claim that PCR counsel was ineffective does not entitle him to federal habeas relief."  *Nayee v. D'ilio*, Civ. No. 15-1288, 2021 WL 1589352, at *30 (D.N.J. Apr. 23, 2021); *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("a petitioner cannot claim constitutionally ineffective assistance of counsel in [state post-conviction] proceedings").  Indeed, 28 U.S.C. § 2254(i) precludes claims for ineffective assistance of PCR counsel.[7]  *See Martinez v. Ryan*, 566 U.S. 1 (2012) (while ineffective assistance on initial collateral review proceedings may be grounds for excusing procedural default, it is not the basis for an independent constitutional claim).

Therefore, Petitioner is not entitled to habeas relief on ground fourteen.

---

[7]      Under *Martinez*, ineffective assistance of counsel at the initial collateral review proceedings may establish cause for a petitioner's default of a claim of ineffective assistance at trial.  *See Martinez*, 566 U.S, at 9.  However, the Court must first decide whether the underlying claim of ineffective assistance of trial counsel succeeds on the existing state court record.  *See Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 723-24 (3d Cir. 2022).  To the extent that the Amended Petition could be read as asserting that his PCR attorney's ineffective assistance constitutes cause for defaulting on a claim of ineffective assistance of trial counsel, Petitioner cannot meet this threshold requirement because he does not identify the claim or claims of trial counsel ineffectiveness that his PCR attorney failed to raise on collateral review.  *See Mayberry v. Petsock*, 821 F.2d 179, 187 (3d Cir. 1987) (noting that the petitioner's vague and general allegations and supporting materials fail to make sufficient showing to justify relief).

### 3. *Witness Certifications*

Ground fifteen lacks merit because it was raised for the first time in Petitioner's second PCR, and therefore was subject to procedural default.  For a procedural default to occur, the state court rule must provide an "adequate" basis for the court's decision and the decision must be "independent of the merits of the federal claim."  *Ross*, 118 F.4th at 565 (citing *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007), *as amended* (June 12, 2007)).  The New Jersey Appellate Division plainly stated that Petitioner's claims were barred under New Jersey Court Rules 3:22-4(b) and 3:22-12(a)(2).  *See P.L.M.*, 2022 WL 1565318, at *2 (noting that "Rule 3:22-12 makes clear the one-year limitation for second or subsequent PCR petitions is non-relaxable"); *see also Ross*, 118 F.4th at 565 ("Ordinarily, for procedural default, a state-court decision must contain a 'plain statement' that its ruling rests on such an adequate and independent state-law ground." (citing *Harris v. Reed*, 489 U.S. 255, 263 (1989)).  New Jersey Court Rule 3:22-4 provides:

> Any ground for relief not raised in the proceedings resulting in the conviction, or in a post-conviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds:
>
> > (1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or
> >
> > (2) that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or
> >
> > (3) that denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey.
>
> A ground could not reasonably have been raised in a prior proceeding only if defendant shows that the factual predicate for that ground could not have been discovered earlier through the exercise

> of reasonable diligence. A denial of relief would be contrary to a new rule of constitutional law only if the defendant shows that the claim relies on a new rule of constitutional law, made retroactive to defendant's petition by the United States Supreme Court or the Supreme Court of New Jersey, that was unavailable during the pendency of any prior proceedings.

Here, "[t]he application of the Rule by the state court was 'adequate for the court's decision and independent of the merits of the federal claim.'" *Kosch v. Att'y Gen. of N.J.*, Civ. No. 22-4814, 2025 WL 849601, at *2 (D.N.J. Mar. 18, 2025) (quoting *Ross*, 118 F.4th at 565). As a result, Petitioner's substantive claim is procedurally defaulted.[8]

Therefore, Petitioner is not entitled to habeas relief on ground fifteen.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). If the "district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a certificate should issue if the petitioner shows that "jurists of reason would find it debatable

---

[8]    Because Petitioner has failed to elaborate beyond the conclusory statement that the PCR court "refused to examine witness certifications through an evidentiary hearing," the Court cannot even consider the merits of this argument. Therefore, even if the claim is not procedurally defaulted, Petitioner's failure to sufficiently identify the facts upon which his claim is based precludes habeas relief. *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298, n.12 (3d Cir. 1991); *see Mayberry*, 821 F.2d at 187 (noting that the petitioner's vague and general allegations and supporting materials fail to make sufficient showing to justify relief).

whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying these standards, this Court finds that a certificate of appealability shall not issue in this case.

## V.    <u>CONCLUSION</u>

For the reason set forth above, and other good cause shown, the Petition is **DENIED**. A certificate of appealability shall not issue. An appropriate Order follows.

Georgette Castner
United States District Judge

Dated: July _10_, 2025

36